THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SPRING WHITING, *an individual and personal representative of the estate of* SETH RAVEN SNYDER,<br><br>Plaintiffs,<br><br>v.<br><br>CARBON COUNTY, UTAH; SHERIFF JEFF WOOD, *in his individual and official capacity*; SERGEANT JORDAN NELSON, *in his individual and official capacity*; DEPUTY DEON GRAVETT, *in his individual and official capacity*; DEPUTY BRADLY JOHNSON, *in his individual and official capacity*; DEPUTY EDWIN GAGE MALMGREN, *in his individual and official capacity*; SERGEANT LANCE SCOVILLE, *in his individual and official capacity*; DEPUTY MARK LARSEN, *in his individual and official capacity*; DEPUTY VICTOR TURNER, *in his individual and official capacity*; AGENT STEVEN REGRUTO, *in his individual capacity*,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING CARBON COUNTY DEFENDANTS' [15] MOTION TO DISMISS**<br><br>Case No. 4:25-cv-00011-DN-PK<br><br>District Judge David Nuffer |

Plaintiff Spring Whiting, as the personal representative of her son's estate, filed this case seeking damages arising out of the death of her son, Seth Raven Snyder, after he passed away while in custody at the Carbon County Jail.[1] Ms. Whiting alleges in her Complaint that Mr. Snyder's death in February 2024 was a direct and proximate result of the various defendants'

---

[1] Complaint, docket no. 1, filed February, 16, 2025; *see also* [Carbon County Defendants'] Motion to Dismiss Plaintiff's Third, Fourth, Seventh, Eighth, and Tenth Through Thirteenth Causes of Action with Prejudice ("Motion"), 2, docket no. 15, filed April 21, 2025.

mismanagement; failure to train, supervise, and discipline; and neglect of an incarcerated individual's medical condition.[2]

The Complaint alleges thirteen "counts," or more properly "causes of action" against ten defendants. Defendants fall into two major categories.

First, the defendants associated with Carbon County ("Carbon County Defendants") are Carbon County, Utah; Carbon County Sheriff Jeff Wood; Sergeant Jordan Nelson; Deputy Deon Gravett; Deputy Bradly Johnson; Deputy Edwin Gage Malmgren; Sergeant Lance Scoville; Deputy Mark Larsen; and Deputy Victor Turner.

Second, State of Utah Probation Officer Steven Regruto ("Agent Regruto") is the only defendant not associated with Carbon County. Unique allegations against him are in the ninth cause of action, though he is a co-defendant in many others.

The causes of action and their associated defendants are:

|   | Cause of Action | Defendants |
|---|---|---|
| 1 | Violation of 42 U.S.C. § 1983 – Eighth and Fourth Amendments – Deliberate Indifference to Medical needs & Cruel and Unusual Punishment | All individual defendants in their individual capacities, and Carbon County Defendants in their official capacities |
| 2 | Failure to Protect – Eighth and Fourteenth Amendments | All individual defendants in their individual capacities and Carbon County Defendants in their official capacities |
| 3 | Municipal Liability – (Monell Claim) – Under 42 U.S.C. § 1983 | Carbon County, Utah |
| 4 | Supervisory Liability Under 42 U.S.C. § 1983 | Defendant Sheriff Jeff Wood in his individual capacity |
| 5 | Violation of the Utah Constitution – Article 1, §§ 7, 9, - Due Process and Cruel and Unusual Punishment | All individual defendants in their individual capacities and Carbon County Defendants in their official capacities |

---

[2] *See* Complaint, docket no. 1, at 6–15.

|    | Cause of Action | Defendants |
|----|-----------------|------------|
| 6  | Unnecessary Rigor Under the Utah Constitution (Article I, § 9) | All individual defendants in their individual capacities and Carbon County Defendants in their official capacities |
| 7  | Survivorship Claim Under Utah Law | All defendants |
| 8  | Negligent Infliction of Emotional Distress | All defendants |
| 9  | Intentional Infliction of Emotional Distress | Defendant Agent Steven Regruto in his individual capacity |
| 10 | Loss of Filial Relationship | All defendants |
| 11 | Negligence Under Utah Law | All individual defendants and Carbon County |
| 12 | Gross Negligence Under Utah Law | All individual defendants in their individual capacities and Carbon County in its official capacity |
| 13 | Wrongful Death Under Utah Law | All individual defendants and Carbon County |

On April 21, 2025, the Carbon County Defendants filed a partial Motion to Dismiss Plaintiffs' Third, Fourth, Seventh, Eighth, Tenth, Eleventh, Twelfth, and Thirteenth causes of action.[3] Agent Regruto is not a party to this Motion and filed a separate motion to dismiss all claims brought against him.[4] On June 16, 2025, Ms. Whiting filed a response conceding dismissal of her fourth and eighth causes without explanation, and that her state common law claims "may not be brought against the individual defendants."[5] Although not explicitly identified in her Response, a review of the Complaint indicates that those state law claims to be dismissed against the individual Carbon County Defendants are the seventh, tenth, eleventh, twelfth, and thirteenth causes of action.[6]

---

[3] Motion, docket no. 15, at 1–2.

[4] [Agent Regruto's] Motion to Dismiss and Memorandum in Support, docket no. 19, filed May 13, 2025.

[5] Plaintiff's Opposition to [Carbon County] Defendants' Motion to Dismiss ("Response") at 7, docket no. 25, filed June 16, 2025.

[6] *See generally* Complaint, docket no. 1, at 6–15.

Defendants filed their Reply on July 30, 2025.[7] As stated above, Plaintiff has already conceded to dismissal of the state common law claims asserted against the Carbon County individual defendants. As to the outstanding state-law claims against the Carbon County Defendants in their official capacities, those defendants have formally withdrawn their motion..[8] Therefore, as Carbon County Defendants explain in their Reply: "[T]he only remaining claims that need to be decided by the Court in this motion are the *Monell* Liability claim and the state common law claims asserted against the Carbon County individual defendants."[9]

In summary, Carbon County Defendants and Ms. Whiting acknowledge that the only remaining claim to be decided on this Motion is Ms. Whiting's third cause of action for "Municipal Liability (Monell Claim) under 42 U.S.C. § 1983" brought against Defendant Carbon County ("Carbon County") ("*Monell* Claim").[10]

After careful review of the parties' briefing and the Complaint, the Defendants' Motion IS GRANTED and Plaintiff's third cause of action is DISMISSED.

**Table of Contents**

1. BACKGROUND FACTS ................................................................................................. 5
   1.1 Events at Four Corners Community Behavioral Health ............................................. 5
   1.2 Transfer from Castleview Hospital to Carbon County Jail ......................................... 5
2. LEGAL STANDARD ....................................................................................................... 7
3. DISCUSSION ................................................................................................................... 8
   3.1 Whiting's Third Cause of Action (Monell Claim) Is Insufficiently Pleaded ............... 8
      3.1.1 Speculating on Results of Discovery Is Not Enough ............................... 11
      3.1.2 Deliberate Indifference is Not Adequately Pleaded ................................. 12
      3.1.3 Alleging a Single Incident is Not Enough to Plead a *Monell* Claim ........... 14
   3.2 Whiting Is Given Leave to Amend Her Complaint ................................................... 15
ORDER ..................................................................................................................................... 15

---

[7] Reply Memorandum in Support of Motion to Dismiss Plaintiff's Third, Fourth, Seventh, Eighth, and Tenth Through Thirteenth Causes of Action with Prejudice ("Reply"), docket no. 27, filed June 30, 2025.

[8] *Id.* at 2.

[9] *Id.* at 3.

[10] *Id.* at 2–3.

1. **BACKGROUND FACTS**

The background facts relevant to Mr. Snyder's death began on February 16, 2024, when at 7:24 a.m. he reported to Four Corners Community Behavioral Health ("Four Corners") for his daily methadone dosage.[11]

**1.1 Events at Four Corners Community Behavioral Health**

The Complaint further details that Mr. Snyder, while at Four Corners, had vomited blood, purposefully hit his head against the wall of the facility, admitted that he had attempted suicide by drinking bleach the day before, and was using methamphetamine.[12] In response, Four Corners then transported Mr. Snyder to Castleview's Hospital Emergency Department ("Castleview") where he was seen by Dr. David Farkas."[13] During treatment at the hospital, Four Corners reported the incident to Mr. Snyder's Adult Probation and Parole officer, Defendant Agent Steven Regruto.[14] The Complaint alleges that Agent Regruto then, "[i]n complete disregard for [Mr. Snyder's] medical and psychological needs at the time [. . .] callously ordered that [Mr. Snyder] be incarcerated for probation violation."[15] Mr. Snyder was then taken into police custody[16] and transported by the police to the Carbon County Jail.[17]

**1.2 Transfer from Castleview Hospital to Carbon County Jail**

At approximately 2:20 p.m. Mr. Snyder entered into "Holding Cell 3 of the Carbon County Jail in Price, Utah.".[18] Later that same date, at approximately 10:57 p.m., Mr. Snyder

---

[11] Complaint, docket no. 1, at 3, ¶15.

[12] *Id.* at 4, ¶¶ 16–17.

[13] *Id.* at 4, ¶ 18.

[14] *Id.* at 4, ¶ 19.

[15] *Id.* at 4, ¶ 20.

[16] *Id.* at 4, ¶ 21.

[17] *Id.* at 4, ¶ 24.

[18] *Id.* at 3, ¶ 11.

died in his cell.[19] In her Complaint and Response, Ms. Whiting argues that Carbon County is liable because of its policies, customs, and practices implemented by its Sheriff, Defendant Jeff Wood.[20] These policies, customs, and practices included "a. Failure to train jail personnel on medical crises, withdrawal symptoms, and suicide prevention; b. Failure to supervise staff to ensure compliance with medical monitoring policies; [and] c. Failure to discipline officers who violated policies on inmate safety and wellness checks."[21]

The Complaint alleges that "[t]hese failures created a pattern and practice of unconstitutional conduct, making inmate death foreseeable."[22] The Complaint asserts that "Defendant Sheriff Jeff Wood failed to maintain proper suicide prevention protocols, which would have mandated heightened monitoring for high-risk individuals" like Mr. Snyder.[23] Instead, Ms. Whiting asserts that these failures created a pattern and practice implemented by Defendant Sheriff Jeff Wood that allowed Mr. Snyder to be "left largely unattended."[24] Despite headcounts and knowing that he had just been picked up from Castleview Hospital, after a medical release, "no one ever spoke another word to him [after arrival at the jail]. No special monitoring. Nothing."[25] The Complaint alleges that Carbon County's Jail "provided only perfunctory monitoring, allowing [Mr. Snyder's] condition to deteriorate for hours."[26] When checks were conducted, the Complaint alleges that they were "merely part of a standard

---

[19] *Id.* at 5, ¶¶ 28–29.

[20] *See id.* at 2, 5, ¶¶ 6, 25; *see also* Response, docket no. 25, at 4, ¶ 25.

[21] Complaint, docket no. 1, at 7, ¶ 46.

[22] *Id.* at 7, ¶ 47.

[23] *Id.* at 5, ¶ 25.

[24] *Id.* at 5–7, ¶¶ 25–27, 28, 46- 47.

[25] *Id.* at 4, ¶ 24.

[26] *Id.* at 5, ¶ 26.

...

'headcount' and did not involve any meaningful assessment of [Mr. Snyder's] well-being."[27] The Complaint further alleges that "[j]ail staff was only required to 'visually observe' [Mr. Snyder], in passing."[28]

When Mr. Snyder's body was discovered the "effects of Liver [sic] Mortis [were] present throughout his body."[29] The determined cause of death by the medical examiner was "Methamphetamine and Methadone toxicity."[30] It also noted that there was severe damage to his "gastrointestinal tract and other internal organs, consistent with the toxic effects of bleach."[31]

## 2. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[32] "A claim has facial plausibility when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] Stating a cause of action requires "enough factual matter (taken as true) to suggest [that a policy or custom exists] . . . [and provide] enough fact to raise a reasonable expectation that discovery will reveal a [policy or custom]."[34]

---

[27] *Id.* at 5, ¶ 27.

[28] *Id.*

[29] *Id.* at 5, ¶ 30.

[30] *Id.* at 5, ¶ 31.

[31] *Id.* at 5, ¶ 32.

[32] *Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[33] *Id.* (quoting *Iqbal*, 556 U.S. at 678).

[34] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

A well-pleaded complaint survives a motion to dismiss even when "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."[35] The facts, however, must be well-pleaded and sufficient to demonstrate "plausibility of entitlement to relief."[36] In determining whether a "complaint states a plausible claim is context specific."[37] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[38] "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of '"further factual enhancement."'"[39] Legal conclusions may be included in a complaint but "must be supported by factual allegations."[40]

## 3. DISCUSSION

Carbon County seeks dismissal of Ms. Whiting's third cause of action, her *Monell* Claim, for failure to state a claim under 12(b)(6) of the Federal Rules of Civil Procedure.[41]

### 3.1 Whiting's Third Cause of Action (Monell Claim) Is Insufficiently Pleaded

Ms. Whiting alleges in her Complaint that Carbon County maintains "policies, customs, and practices that were deliberately indifferent to the serious medical needs of inmates, including:" the failure to train, supervise, and discipline employees.[42] A well-pleaded complaint alleging municipal liability must show three elements: "(1) official policy or custom[,] (2)

---

[35] *Id.* (internal quotations omitted).

[36] *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010).

[37] *Iqbal*, 556 U.S. at 678.

[38] *Id.*

[39] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[40] *Id.*

[41] Motion, docket no. 15, at 2; *see also* Fed. R. Civ. P. 12(b)(6).

[42] Complaint, docket no. 1, at 7, ¶ 46.

8

causation, and (3) state of mind."[43] To the extent that the Complaint is attempting to "[allege] a custom or policy by the Defendants' failure to act, [it] must plausibly allege there is a pattern of deliberate indifference to situations like [that alleged in the complaint]."[44] As explained below, Ms. Whiting's *Monell* Claim fails to meet the first element and the Motion is GRANTED.

Carbon County's Motion asserts that the Complaint fails to "allege[] a single specific custom or policy, let alone facts showing a direct causal link between the unidentified custom or policy and the constitutional violation alleged."[45] Carbon County also argues dismissal is proper because "it is improper to infer an official policy—the necessary predicate for *Monell* liability—from only one instance of alleged misconduct."[46] Carbon County is correct.

The Supreme Court in *Monell* held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[47] Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[48] "A challenged practice may be deemed an official policy or custom for § 1983 [governmental actor] purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a [governmental actor] policymaker, or deliberately indifferent training or supervision."[49] A policy or custom may take the form of:

(1) a formal regulation or policy statement;

---

[43] *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1239 (10th Cir. 2020) (*quoting Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013)); *see also Crowson v. Washington County State of Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020).

[44] *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).; *see* Complaint, docket no. 1, at ¶¶ 46 (a)–(c), 47.

[45] Motion, docket no. 15, at 2.

[46] Reply at 3.

[47] *Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1978).

[48] *Id.*

[49] *Schneider*, 717 F.3d at 770.

9

> (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;
> (3) the decisions of employees with final policymaking authority;
> (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or
> (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[50]

Ms. Whiting's Complaint and Response rely on the fifth category of policy or custom.

Ms. Whiting argues that her *Monell* claim, specifically at paragraphs 21–30, 25–27, 46(a)–(b) of her Complaint, is sufficiently plead to survive the Motion.[51] The alleged facts identified by Ms. Whiting in support of her *Monell* Claim are as follows:

> 45. Plaintiff incorporates all preceding paragraphs as if fully stated herein.
> 46. Carbon County maintained unconstitutional policies, customs, and practices that were deliberately indifferent to the serious medical needs of inmates, including:
>> a. Failure to train jail personnel on medical crises, withdrawal symptoms, and suicide prevention;
>> b. Failure to supervise staff to ensure compliance with medical monitoring policies;
>> c. Failure to discipline officers who violated policies on inmate safety and wellness checks.
> 47. These failures created a pattern and practice of unconstitutional conduct, making inmate deaths foreseeable.
> 48. Defendant's inaction violated Seth's constitutional rights.
> 49. As a result, Plaintiff suffered damages.[52]

Ms. Whiting also argues in her Response that paragraphs 25 through 27 also contain factual allegations to support her *Monell* Claim:

> 25. Defendant Sheriff Jeff Wood failed to maintain proper suicide prevention protocols, which would have mandated heightened monitoring for high-risk individuals, such as Seth.

---

[50] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) (quoting *Crowson*, 983 F.3d at 1184).

[51] Response, docket no. 25, at 3–5.

[52] Complaint, docket no. 1, at 7–8, ¶¶ 45–49.

> 26. Therefore, while in custody, Seth was left largely unattended and the jail staff provided only perfunctory monitoring, allowing Seth's condition to deteriorate unnoticed for hours.
>
> 27. When checks were conducted, they were merely part of a standard "headcount" and did not involve any meaningful assessment of Seth's well-being. Jail staff was only required to "visually observe" Seth, in passing.[53]

These factual allegations are threadbare and do not identify any written or promulgated policies, customs, or practices.[54] Here, Ms. Whiting has failed to state a § 1983 claim for liability pursuant to a failure to train, supervise, or discipline theory. Ms. Whiting's Complaint does not contain sufficient allegations of inadequate training, supervision, and discipline regarding medical crises, withdrawal symptoms, and suicide prevention. The allegations are threadbare and speculative without such factual enhancements. Specifically, the Complaint fails to allege what training, supervision, or discipline officers received or should have received, how it was deficient, or why or how the need for more or different or supervision was obvious. Instead, Ms. Whiting claims that the alleged constitutional violation is indicative of a failure to train or supervise.

### 3.1.1 Speculating on Results of Discovery Is Not Enough

Ms. Whiting in her Response argues that "any further detail regarding the County's policies and practices can be appropriately developed during discovery."[55] Ms. Whiting does not cite to any case law in support of this argument. To survive a motion to dismiss, the complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."[56] More specifically, the Tenth Circuit

---

[53] *Id.* at 5, ¶¶ 25–27; *see also* Response, docket no. 25, at 3–5.

[54] Complaint, docket no. 1, at 7, ¶ 46.

[55] Response, docket no. 25, at 5

[56] *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545 ("Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.") ("And, "Asking

explains that a court is to "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."[57]

At this stage of the litigation, the court's task is "to stay within the four corners of the [Complaint]."[58] The Complaint may not rely on "potential future discovery to rescue the inadequacies in his attempt to allege facts stating a claim upon which relief may be granted."[59] On a motion to dismiss, the standard is "whether the complaint's allegations support an asserted cause of action, not whether evidence that may be discovered in the future could support an asserted cause of action."[60] A bare assertion that facts *might* materialize later through discovery is insufficient.[61]

### 3.1.2 Deliberate Indifference is Not Adequately Pleaded

To the extent that the Complaint is attempting to allege "custom or policy comprised a failure to act, he or she must demonstrate the municipality's inaction resulted from "deliberate indifference to the rights" of the plaintiff."[62] A municipality cannot be held liable under § 1983 'for its failure to train or supervise [or discipline] . . . unless . . . [its] policymakers 'can

---

for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the allegations].")).

[57] *Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007).

[58] *Duran v. Colbert*, 2023 WL 2742738, at *2 (D. Utah Mar. 31, 2023).

[59] *See id.* ("Second, Plaintiff is again relying on potential future discovery to rescue the inadequacies in his attempt to allege facts stating a claim upon which relief may be granted. As explained above, the Court's role here is not to get ahead of this stage of litigation, in which the sole question is whether the factual allegations stated equate to the elements of a cause of action.").

[60] *Id.*

[61] *See Duran*, 2023 WL 2742738, at *2 (citing *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.")).

[62] *Jenkins*, 81 F.3d at 994; *see also City of Canton v. Harris*, 489 U.S. 378, 379-89 (1989).

reasonably be said to have been deliberately indifferent to the need' for further training or supervision.'"[63] Deliberate indifference may be demonstrated

> when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. Thus, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."[64]

The Complaint alleges that the failure to train, supervise, and discipline "created a pattern and practice of unconstitutional conduct, making inmate deaths foreseeable."[65]

Carbon County argues that the Complaint fails to establish factual assertions of an official policy or a pattern of tortious conduct.[66] In her Response to the Motion, Ms. Whiting argues that all that is required to establish a custom, policy, or practice is "one application . . . to satisfy fully *Monell*'s requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy."[67]

Ms. Whiting claims she has "satisfied this requirement" by alleging a "failure to implement adequate suicide prevention protocols, the use of only perfunctory visual checks for high-risk inmates, and the lack of any policy requiring reassessment after

---

[63] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir.2010) (quoting *City of Canton,* 489 U.S. at 390).

[64] *City of Canton,* 489 U.S. at 388 (emphasis added).

[65] Complaint, docket no. 1, at 7, ¶ 47.

[66] Motion, docket no. 15, at 4.

[67] Response, docket no. 25, at 5 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–482 (1986)).

13

hospital discharge . . . ."[68] This is insufficient. The Complaint does not include any factual allegations or enhancements alleging an "official policy," pattern of tortious conduct, or a deliberate or conscious decision made by the County which would constitute a policy. Therefore, her claims of deliberate indifference are insufficiently pleaded.

### 3.1.3 Alleging a Single Incident is Not Enough to Plead a *Monell* Claim

There are "limited circumstances" in which the failure to train "may rise to the level of an official government policy for purposes of § 1983."[69] It is not enough to simply point out "[t]hat a particular officer may be unsatisfactorily trained" or "that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."[70] Such arguments "could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable to respond properly to the usual and recurring situations with which they must deal."[71] Simply put, even "adequately trained officers occasionally make mistakes[.]"[72] The Tenth Circuit has explained that absent a "pattern," deliberate indifference can be found "if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations."[73]

---

[68] Response, docket no. 25, at 5; *see also* Complaint, docket no. 1, at 7, ¶ 47.

[69] *Connick v. Thompson,* 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011).

[70] *City of Canton,* 489 U.S. at 390–91.

[71] *Id.*

[72] *Id.* at 391.

[73] *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998).

14

The allegations in paragraph 46 are conclusory and not factual allegations showing a pattern. The allegations in paragraphs 25-27 are facts in this case alone, not showing a pattern.

Therefore, the Motion[74] is GRANTED without prejudice as to the third cause of action.

### 3.2 Whiting Is Given Leave to Amend Her Complaint

Because this order dismisses the Monell Claim for failure to state a claim, and because she may be in possession of facts to make sufficient allegations, and because the death of Mr. Snyder is such a significant event, Ms. Whiting will be granted leave to amend her complaint within 28 days of this order.

Ms. Whiting shall file her amended complaint consistent with this Order,

a. if she desires, to amend allegations in her third cause of action to render it sufficient; and

b. to effectuate her concessions to

   i. dismiss Count IV (Supervisory Liability Under 42 U.S.C. § 1983);

   ii. Count VIII (Negligent Infliction of Emotional Distress); and

   iii. her state common law claims against the individual defendants in

   (a) Count VII (Survivorship Claim Under Utah Law) and

   (b) Count X (Loss of Filial Relationship).[75]

### ORDER

Based on the foregoing, and finding good cause therefor,

IT IS HEREBY ORDERED that the Motion[76] is GRANTED. The third cause of action is DISMISSED without prejudice. With Ms. Whiting's concessions, her fourth, eighth, and state

---

[74] Motion, docket no. 15.

[75] Response at 7, docket no. 25.

[76] *Id.*

common law claims asserted against the Carbon County individual defendants in the seventh, tenth, eleventh, twelfth, and thirteenth causes of action are DISMISSED with prejudice.

Signed January 28, 2026.

BY THE COURT

David Nuffer
United States District Judge