THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SPRING WHITING, *an individual and personal representative of the estate of* SETH RAVEN SNYDER, <br><br> Plaintiffs, <br><br> v. <br><br> CARBON COUNTY, UTAH; SHERIFF JEFF WOOD, *in his individual and official capacity*; SERGEANT JORDAN NELSON, *in his individual and official capacity*; DEPUTY DEON GRAVETT, *in his individual and official capacity*; DEPUTY BRADLY JOHNSON, *in his individual and official capacity*; DEPUTY EDWIN GAGE MALMGREN, *in his individual and official capacity*; SERGEANT LANCE SCOVILLE, *in his individual and official capacity*; DEPUTY MARK LARSEN, *in his individual and official capacity*; DEPUTY VICTOR TURNER, *in his individual and official capacity*; AGENT STEVEN REGRUTO, *in his individual capacity*, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT STEPHEN REGRUTO'S [19] MOTION TO DISMISS** <br><br> Case No. 4:25-cv-00011-DN-PK <br><br> District Judge David Nuffer |

This order resolves a motion to dismiss filed by defendant State of Utah Probation Officer Steven Regruto.[1] A separate motion to dismiss was filed by all other defendants.[2] A separate order resolves that separate motion.

---

[1] Agent Regruto's Motion to Dismiss and Memorandum in Support ("Motion"), docket no. 19, filed May 13, 2025.

[2] [Carbon County Defendants'] Motion to Dismiss Plaintiff's Third, Fourth, Seventh, Eighth, and Tenth Through Thirteenth Causes of Action with Prejudice ("Carbon County Motion"), 2, docket no. 15, filed April 21, 2025.

Plaintiff Spring Whiting, as the personal representative of her son's estate, filed this case seeking damages arising out of the death of her son, Seth Raven Snyder, after he passed away while in custody at the Carbon County Jail.[3] Ms. Whiting alleges in her Complaint that Mr. Snyder's death in February 2024 was a direct and proximate result of the various Defendants' mismanagement, failure to supervise, and neglect of an incarcerated individual's medical condition.[4]

The Complaint alleges thirteen "counts" (or more properly "causes of action") against ten defendants. The causes of action are:

|   | Cause of Action | Defendants |
|---|---|---|
| 1 | Violation of 42 U.S.C. § 1983 – Eighth and Fourth Amendments – Deliberate Indifference to Medical needs & Cruel and Unusual Punishment | All individual defendants in their individual capacities, and Carbon County Defendants in their official capacities |
| 2 | Failure to Protect – Eighth and Fourteenth Amendments | All individual defendants in their individual capacities and Carbon County Defendants in their official capacities |
| 3 | Municipal Liability – (Monell Claim) – Under 42 U.S.C. § 1983 | Carbon County, Utah |
| 4 | Supervisory Liability Under 42 U.S.C. § 1983 | Defendant Sheriff Jeff Wood in his individual capacity |
| 5 | Violation of the Utah Constitution – Article 1, §§ 7, 9, - Due Process and Cruel and Unusual Punishment | All individual defendants in their individual capacities and Carbon County Defendants in their official capacities |
| 6 | Unnecessary Rigor Under the Utah Constitution (Article I, § 9) | All individual defendants in their individual capacities and Carbon County Defendants in their official capacities |
| 7 | Survivorship Claim Under Utah Law | All defendants |
| 8 | Negligent Infliction of Emotional Distress | All defendants |
| 9 | Intentional Infliction of Emotional Distress | Defendant Agent Steven Regruto in his individual capacity |

---

[3] Complaint at 5–15, docket no. 1, filed February, 16, 2025.

[4] *See id.* at 6–15.

|    | Cause of Action | Defendants |
|----|-----------------|------------|
| 10 | Loss of Filial Relationship | All defendants |
| 11 | Negligence Under Utah Law | All individual defendants and Carbon County |
| 12 | Gross Negligence Under Utah Law | All individual defendants in their individual capacities and Carbon County in its official capacity |
| 13 | Wrongful Death Under Utah Law | All individual defendants and Carbon County |

Of these claims only 1–4 are federal – the others are state law claims. Defendants fall into two major categories:

> First, the defendants associated with Carbon County ("Carbon County Defendants") are Carbon County, Utah; Carbon County Sheriff Jeff Wood; Sergeant Jordan Nelson; Deputy Deon Gravett; Deputy Bradly Johnson; Deputy Edwin Gage Malmgren; Sergeant Lance Scoville; Deputy Mark Larsen; and Deputy Victor Turner. [The Carbon County Defendants have filed their own motion to dismiss[5] and are not involved in this Motion.]

> Second, State of Utah Probation Officer Steven Regruto ("Agent Regruto") is the only defendant not associated with the Carbon County Defendants. He is also only named as a Defendant in his individual capacity.[6]

Unique allegations against Regruto are in the ninth cause of action, though he is named in all but the third and fourth causes of action. The Complaint's first and second claims are the only federal law claims against Regruto.

On May 13, 2025, Agent Regruto filed the Motion to dismiss "all claims asserted against him in the Complaint with prejudice"[7] under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. Specifically, Agent Regruto seeks dismissal of Ms. Whiting's

- first and second causes because they are barred by qualified immunity;

---

[5] *See* Carbon County Motion, docket no. 15, filed April 21, 2025.

[6] *Id.* at 1–3, ¶ 8.

[7] Agent Regruto's Motion to Dismiss and Memorandum in Support ("Motion") at 1, docket no. 19, filed May 13, 2025 (internal citation omitted).

- fifth and sixth causes of action because Utah's cruel and unusual punishment and unnecessary rigor clauses are inapplicable to someone not yet incarcerated or arrested and because Ms. Whiting fails to demonstrate that Agent Regruto flagrantly violated Mr. Snyder's constitutional rights; and

- seventh through thirteenth tort claims because they are barred by the Utah Governmental Immunity Act ("UGIA").[8]

Ms. Whiting has not filed a response to the Motion. Pursuant to DUCivR 7-1(f), a "failure to respond timely to a motion may result in the court granting the motion without further notice."[9] The failure to respond appears to be deliberate. Less than a week after this Motion was filed, on May 19, 2025, Ms. Whiting and the Carbon County Defendants filed a stipulated motion seeking more time to respond to the Carbon County Defendants' motion to dismiss but not to this Motion.[10] In May, 2025, and August 2025, the Carbon County Defendants stipulated to allow Plaintiff additional time to file a motion to amend her complaint.[11] No amended complaint was filed within the timeframe given, and Agent Regruto did not join those stipulations and has not withdrawn this Motion.[12]

After careful review of the Motion alongside the Complaint, and for the reasons stated herein, the Motion[13] is GRANTED. Ms. Whiting's causes of action against Agent Regruto in the Complaint are all DISMISSED WITH PREJUDICE.

---

[8] *Id.* at 1–2.

[9] DUCivR 7-1(f).

[10] Stipulated Motion to Extend Plaintiff's Deadline to File an Opposition to Defendants' Motion to Dismiss ("Stipulated Motion"), docket no. 20, filed May 19, 2025.

[11] *Id.*; *see also* Stipulated Motion for Scheduling Order, docket no. 31, filed August 19, 2025. Regruto did not join these motions.

[12] *Id.*

[13] Motion, docket no. 19 filed May 13, 2025.

## Table of Contents

1.    BACKGROUND FACTS ................................................................................................ 5
    1.1 Events at Four Corners Community Behavioral Health and Castleview Hospital ....... 6
    1.2 Transfer from Castleview Hospital to Carbon County Jail ........................................... 6
2.    DISCUSSION ............................................................................................................... 7
    2.1 Motion to Dismiss Standard of Review ...................................................................... 8
    2.2 Mr. Snyder's Status as a Pretrial Detainee Bars Ms. Whiting's Eighth Amendment
        Claims ....................................................................................................................... 9
    2.3 Ms. Whiting's First and Second Causes of Action Have Inadequately Pleaded
        Fourteenth Amendment Claims ............................................................................... 11
        2.3.1 Agent Regruto's Status as Probation Officer Does Not Create  a Duty to
            Provide Medical Care ................................................................................... 12
        2.3.2 The Complaint Has Not Pleaded Facts To Assert a Fourteenth Amendment
            Claim of a Deliberate Indifference to the Serious Medical Needs of an
            Inmate .......................................................................................................... 13
    2.4 The Complaint Fails to Adequately State Claims for Violation of Due Process, Cruel
        and Unusual Punishment, and Unnecessary Rigor .................................................. 16
    2.5 The Utah Governmental Immunity Act Bars Ms. Whiting's Tort Claims ................. 18
        2.5.1 Claims For Survivorship, Loss of Filial Relationship, Negligence, Gross
            Negligence, and Wrongful Death Are Barred By The UGIA ................... 19
        2.5.2 The Claim For Intentional Infliction of Emotional Distress Is Barred Under
            The UGIA .................................................................................................... 21
        2.5.3 The Claim For Negligent Infliction of Emotional Distress Is Barred Under
            UGIA ............................................................................................................ 21
    2.6 Ms. Whiting Cannot Recover For The Loss of Filial Consortium of An Adult Child 22
ORDER ................................................................................................................................ 23

## 1.  BACKGROUND FACTS

The facts relevant to Mr. Snyder's death began on February 16, 2024, when at 7:24 a.m. he reported to Four Corners Community Behavioral Health ("Four Corners") for his daily methadone dosage.[14] That was the first of two visits to Four Corners that day.[15] Two hours later, Mr. Snyder called Four Corners and admitted "he had been using Methamphetamine," and that he attempted suicide by drinking bleach the previous day.[16] He then returned to Four Corners.[17]

---

[14] Complaint, docket no. 1, at 3, ¶ 15.

[15] *Id.* at 3–4, ¶¶ 15–17.

[16] *Id.* at 4, ¶ 16.

[17] *Id.*

### 1.1 Events at Four Corners Community Behavioral Health and Castleview Hospital

The Complaint further details that Mr. Snyder, while at Four Corners the second time, had vomited blood and purposefully hit his head against the wall of the facility.[18] In response, Four Corners then transported Mr. Snyder to Castleview's Hospital Emergency Department ("Castleview") where he was seen by Dr. David Farkas."[19] During treatment at the hospital, Four Corners reported the incident to Mr. Snyder's Adult Probation and Parole officer, Defendant Agent Steven Regruto.[20] The Complaint alleges that Agent Regruto then "ordered that [Mr. Snyder] be incarcerated for probation violation."[21] The Complaint next alleges that Mr. Snyder was taken into police custody[22] and transported by the police to the Carbon County Jail.[23]

### 1.2 Transfer from Castleview Hospital to Carbon County Jail

Most of the events giving rise to Ms. Whiting's claims occurred after Agent Regruto had no involvement – they occur after the arrest by local police and incarceration.

At approximately 2:20 p.m. Mr. Snyder entered into "Holding Cell 3 of the Carbon County Jail in Price, Utah" and into Carbon County's custody at the county jail.[24] Later that same date, at approximately 10:57 p.m., Mr. Snyder died in his cell.[25] When Mr. Snyder's body was discovered the "effects of Liver [sic] Mortis [were] present throughout his body."[26] The determined cause of death by the medical examiner was "Methamphetamine and Methadone

---

[18] *Id.* at 4, ¶ 17.

[19] *Id.* at 4, ¶ 18.

[20] *Id.* at 4, ¶ 19.

[21] *Id.* at 4, ¶ 20.

[22] *Id.* at 4, ¶ 21.

[23] *Id.* at 4, ¶ 24.

[24] *Id.* at 3, ¶ 11.

[25] *Id.* at 5, ¶ 28.

[26] *Id.* at 5, ¶ 30.

toxicity."[27] It also noted that there was severe damage to his "gastrointestinal tract and other internal organs, consistent with the toxic effects of bleach."[28]

Ms. Whiting's Complaint filed February 16, 2025 alleges that Agent Regruto, in his individual capacity "[i]n a complete disregard for [Mr. Snyder's] medical and psychological needs at the time, . . . callously ordered that [Mr. Snyder] be incarcerated for a probation violation."[29] The local police, not Agent Regruto, escorted Mr. Snyder to the Carbon County Jail.[30] Ms. Whiting further asserts in the Complaint's ninth cause of action, for intentional infliction of emotional distress, that Agent Regruto ordered Mr. Snyder's incarceration despite clear evidence of a medical emergency.[31]

Throughout the Complaint the only action directly attributed to Agent Regruto is that he "ordered Seth's incarceration despite clear evidence of a medical emergency, knowing it would cause Seth additional suffering and distress."[32]

## 2. DISCUSSION

The Motion seeks dismissal of all claims brought against Agent Regruto for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[33]

---

[27] *Id.* at 5, ¶ 31.

[28] *Id.* at 5, ¶ 32.

[29] *Id.* at 4, ¶ 20.

[30] *Id.* at 4, ¶21.

[31] *Id.* at 11, ¶ 83.

[32] *Id.* at 11, ¶ 83; *see also id.* at 3–4, ¶¶ 8, 19–20.

[33] Motion, docket no. 19, at 3.

### 2.1 Motion to Dismiss Standard of Review

The Motion seeks dismissal of the Complaint's state tort claims for lack of jurisdiction under the UGIA and argues, "Motions seeking dismissal under the Governmental Immunity Act of Utah are motions under F.R.C.P. 12(b)(1)."[34] In support of this statement the Motion cites *Pinder v. Duchesne Cnty. Sheriff*.[35] However, *Pinder* is distinguishable because Pinder had failed to comply with the UGIA's notice-of-claim provisions: "Potential plaintiffs who look to bring a claim . . . must comply with the UGIA's notice-of-claim provisions. If they do not do so, the district court lacks subject matter jurisdiction over the claim and must dismiss it."[36] But Regruto asserts governmental immunity as an affirmative defense for a reason other than failure to file a notice of claim. Regruto's defense does not implicate the court's subject matter jurisdiction. Instead, Regruto challenges the substantive merits of Ms. Whiting's state tort claims under the UGIA's waiver-and-exception framework. Rule 12(b)(6) is the applicable rule for asserting the defense of "failure to state a claim upon which relief can be granted."

The Motion also seeks dismissal for failure to state a claim under 12(b)(6) of Ms. Whiting's causes of action for federal (first and second causes of action) and state (fifth and sixth causes of action) constitutional violations.[37]To successfully overcome a motion to dismiss brought under Rule 12(b)(6), the Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[38] "A claim has facial plausibility when

---

[34] *Id.* at 4.

[35] 2020 UT 68, ¶¶ 58–61, 478 P.3d 610.

[36] *Id.* ¶ 66.

[37] Motion, docket no. 19, at 1–2, 5, 15–19.

[38] *Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 12(b)(6).

the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[39]

Determining whether a "complaint states a plausible claim is context specific."[40] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[41] "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of "'further factual enhancement.'"[42] Legal conclusions may be included in a complaint but "must be supported by factual allegations."[43]

### 2.2 Mr. Snyder's Status as a Pretrial Detainee Bars Ms. Whiting's Eighth Amendment Claims

The first and second causes of action allege Eighth and Fourteenth Amendment violations. In the Tenth Circuit, "[p]retrial detainees are protected under the Due Process Clause [Fourteenth Amendment] rather than the Eighth Amendment."[44] The analysis remains the same under the Fourteenth Amendment and is "identical to that applied in Eighth Amendment cases brought pursuant to § 1983."[45]

Ms. Whiting's first cause of action alleges "deliberate indifference to [Mr. Snyder]'s medical and psychological needs by failing to provide adequate medical treatment and necessary supervision and monitoring"[46] and her second cause of action alleges breach of the

---

[39] *Id.* (quoting *Iqbal*, 556 U.S. at 678).

[40] *Iqbal*, 556 U.S. at 678.

[41] *Id.*

[42] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[43] *Id.*

[44] *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (*abrogated in part on other grounds*, *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020)).

[45] *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985); *see also Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

[46] Complaint, docket no. 1, 6, ¶ 34.

"constitutional duty to protect Seth from harm while in custody, including from known medical and mental health risks."[47] Ms. Whiting's first and second causes of action both allege Eighth Amendment violation allegations despite Mr. Snyder's status as a pretrial detainee. Because he was a pretrial detainee the claims stated under the Eighth Amendment alone are DISMISSED.

These alleged Eighth Amendment violations are instead claims under the Fourteenth Amendment's due process clause. The Tenth Circuit explains that the "[f]ailure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs."[48] "Nevertheless, *pretrial detainees* are in any event entitled to the degree of protection against denial of medical attention which applies to convicted inmates. Thus, it is proper to apply a due process standard which protects pretrial detainees against deliberate indifference to their serious medical needs."[49] Similarly, the Eighth Amendment's restriction that no "cruel and unusual punishments [be] inflicted" has been extended to pretrial detainees through the Fourteenth Amendment's due process clause.[50]

Similarly, Ms. Whiting's second cause of action alleging failure to protect "from known medical and mental health risks" is also extended to pretrial detainees through the Fourteenth Amendment's due process clause.[51] "Prison officials have a duty to protect prisoners from harm, including harm caused by other prisoners."[52] To prevail on a failure to protect claim,

> "an inmate must show (1) that the conditions of his incarceration present an objective substantial risk of serious harm and (2) prison officials had subjective knowledge of the risk of harm, in other words, an official must both be aware of

---

[47] *Id.* at 7, ¶ 41.

[48] Motion, docket no. 19, at 3; *see also* Garcia, 768 F.2d at 307.

[49] Garcia, 768 F.2d at 307 (emphasis added).

[50] U.S. Const. amend. VIII; *see also Estelle v. Gamble*, 429 U.S. 97, 100 (1976).

[51] *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 Fed. Appx. 921, 926 (10th Cir. 2020).

[52] *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[53]

These claims brought under the Eighth Amendment are DISMISSED because of Mr. Snyder's status as a pretrial detainee. They will be analyzed under the Fourteenth Amendment.

### 2.3 Ms. Whiting's First and Second Causes of Action Have Inadequately Pleaded Fourteenth Amendment Claims

Agent Regruto's Motion also argues that qualified immunity bars Ms. Whiting's first and second causes of action.[54] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[55] This "affirmative defense" of qualified immunity "creates a presumption that the defendant is immune from suit."[56] To determine whether a defendant is entitled to qualified immunity, a court must conduct a two-part inquiry:

> First, . . . whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.[57]

"This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity."[58]

---

[53] *Id.*

[54] Motion, docket no. 19, at 4-5.

[55] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted).

[56] *Waterhouse v. Direzza*, 129 F.4th 1212, 1220 (10th Cir. 2025) (Sanchez v. Guzman, 105 F.4th 1285, 1292 (10th Cir. 2024)); *see also Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021).

[57] *Truman*, 1 F.4th at 1235 (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

[58] *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1208 (10th Cir. 2017).

The first prong of the inquiry is essentially the same as the standard Rule 12(b)(6) analysis of whether a complaint pleads a cause of action.

> To be sure, the first prong of the qualified immunity analysis—whether the facts alleged make out a violation of a constitutional right—fits like a glove at the motion-to-dismiss stage because it overlaps with a district court's inquiry under Rules 8(a) and 12(b)(6). *See Kedra v. Schroeter*, 876 F.3d 424, 435 (3d Cir. 2017). In other words, a well-pleaded § 1983 complaint necessarily alleges a constitutional violation for purposes of qualified immunity, while a complaint that fails to plausibly plead the violation of a right does not. [59]

"In other words, a prong one analysis, as implemented here, is a straightforward determination of whether the facts in [the] Complaint are sufficient to support a Section 1983 claim." [60]

Ms. Whiting's Complaint fails to adequately plead a constitutional violation. Ms. Whiting has inadequately pleaded her first and second causes of action to include the necessary factual allegations pertaining to Agent Regruto's deliberate indifference to medical needs and failure to protect from danger.

### 2.3.1 Agent Regruto's Status as Probation Officer Does Not Create a Duty to Provide Medical Care

In *Arnold v. Gonzalez*, an offender claimed parole officers had violated his Eighth Amendment rights "by failing to arrange for him to leave jail to attend medical appointments" related to a broken foot.[61] This, he alleged, violated his right to medical care.[62] The officers claimed qualified immunity, and the Tenth Circuit upheld this immunity status explaining, "[The plaintiff] does not cite any case, from any jurisdiction, holding that parole officers have a

---

[59] *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025).

[60] *Keziah Ridgeway v. The School District of Philadelphia, et al.*, No. CV 25CV2440, 2026 WL 94617, at *13 (E.D. Pa. Jan. 13, 2026).

[61] *Arnold v. Gonzalez*, 829 F. App'x 867, 870 (10th Cir. 2020).

[62] *See id.*

constitutional duty to arrange for or accommodate an offender's medical care when that offender is incarcerated for a parole violation."[63] Parole is functionally equivalent to probation.[64]

Probation officers do not have a constitutional duty to arrange for a detainee's medical care while detained for a probation violation.[65] This is the first reason the Complaint's first and second causes of action must be dismissed.

### 2.3.2 The Complaint Has Not Pleaded Facts To Assert a Fourteenth Amendment Claim of a Deliberate Indifference to the Serious Medical Needs of an Inmate

To bring a plausible claim for cruel and unusual punishment by deliberate indifference to medical needs, Ms. Whiting "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. This standard includes both an objective component and a subjective component."[66] To prevail on a failure to protect claim or acts of deliberate indifference to serious medical needs, the Complaint must show the same objective and subjective components.[67] The Complaint includes conclusory and threadbare assertions for both components:

For the objective component, "the alleged deprivation must be 'sufficiently serious to constitute a deprivation of constitutional dimension.'"[68] "Nevertheless, as a first requirement, the deprivation alleged must be objectively sufficiently serious."[69] "A medical need is objectively

---

[63] *Id.*

[64] *See U.S. v. Ruby*, 706 F.3d 1221, 1226 (10th Cir. 2013) ("Following the lead of *Morrissey,* the Supreme Court in *Gagnon* held that the due process interests at stake when revoking parole are identical to those at stake when revoking probation.").

[65] *See generally* Complaint, docket no. 1, 6–7,

[66] *Strain*, 977 F.3d at 989.

[67] *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996).

[68] *Strain*, 977 F.3d at 989 (quoting *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)); *see also Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir.1999).

[69] *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996).

serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[70]

The Complaint fails to allege facts that Mr. Snyder had a medical condition diagnosed by a physician, or one so obvious a lay person would have recognized its seriousness. Instead, the Complaint establishes the opposite: that Mr. Snyder was "seen by Dr. David Farkas" at Castleview and thereafter released into "local police" custody.[71] The only action directly attributed to Agent Regruto in the Complaint is that he "ordered Seth's incarceration despite clear evidence of a medical emergency, knowing it would cause Seth additional suffering and distress."[72]

There are also no other facts that Mr. Snyder's condition, at the time of Agent Regruto's involvement, would have been obvious to a lay person and the allegation is contradicted by the Complaint because he was in the care of Castleview. And he was released without any physician-mandated treatment for medical needs. Not only this, but Mr. Snyder did not pass away until he was in jail, hours after Agent Regruto's involvement.[73]

Under the subjective requirement, the plaintiff "must show that [the defendant] had subjective knowledge of the risk of harm."[74] A defendant acts with subjective knowledge only if he is "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists" and he actually "draw[s] the inference."[75]

---

[70] *Id.* (quoting *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018)).

[71] Complaint, docket no. 1, at 4, ¶¶ 18–21 (noting Dr. Farkas is not a party to the Complaint).

[72] *Id.* at 11 ¶ 83; *see also id.* at 3–4, ¶¶ 8, 19–20.

[73] Complaint, docket no. 1, at 4, ¶¶ 20, 21, 24.

[74] *Smith v. Allbaugh*, 987 F.3d 905, 910 (10th Cir. 2021) (quotations omitted); *see also Perkins,* 165 F.3d at 809.

[75] *Id.*

Allegations that a defendant "knew or should have known" of Mr. Snyder's medical needs are conclusory statements.[76] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[77] Conclusory statements require further factual enhancements and "the Federal Rules *do not* require courts to credit a complaint's conclusory statements without reference to its factual context."[78]

Other than a conclusory statement related to Agent Regruto's subjective knowledge, the Complaint fails to show Agent Regruto knew Mr. Snyder faced a specific risk or that Agent Regruto was made aware of a medical condition. Instead, it includes a generalized, conclusory statement attributed to every defendant, alleging: "Each Defendant knew or should have known about Seth's medical distress based on his condition, prior history, and observable behavior."[79] Ms. Whiting simply parrots back general standards, which is not sufficient.[80] There are also no alleged facts that Four Corners or Castleview ever informed Agent Regruto about Mr. Snyder's medical condition.

Agent Regruto was never in a position of custodial responsibility, nor are there any facts alleged of dire medical distress during his interactions with Mr. Snyder.[81] Dr. Farkas did not direct further treatment, and there are no factual assertions of Mr. Snyder's condition being so obvious that Agent Regruto would have easily recognized the necessity for further doctor's attention. As the Motion persuasively argues, "The Court can only guess exactly what Four

---

[76] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1289 –90 (10th Cir. 2019).

[77] *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. 544, 557).

[78] *Id.* at 687 (emphasis added).

[79] *Id.* at 6, ¶ 36; *see also id.* at 7, ¶ 42.

[80] *Iqbal*, 556 U.S. at 678.

[81] *See* Complaint, docket no. 1, at 4, 6–7, ¶¶17–24, 36, 42.

Corners told Agent Regruto in its report."[82] Additional guesswork would also be necessary to guess the conversation between Dr. Farkas' (or Castleview) and Agent Regruto after receiving the order for arrest from Agent Regruto. There are also no factual averments of Agent Regruto's presence at the arrest or during Mr. Snyder's booking in or confinement at the Carbon County Jail.

Without these missing allegations, Ms. Whiting has insufficiently pleaded her Fourteenth Amendment claim for deliberate indifference to an inmate's medical needs. This is another reason the First and Second Causes of Action against Agent Regruto must be dismissed.

### 2.4 The Complaint Fails to Adequately State Claims for Violation of Due Process, Cruel and Unusual Punishment, and Unnecessary Rigor

The Motion seeks dismissal of Ms. Whiting's fifth and sixth causes of action for failure to state facts supporting flagrant violations of §§7 and 9 of the Utah Constitution.[83] To proceed with a private suit for damages under a constitutional tort theory, a plaintiff must establish three elements: first, they suffered a "flagrant violation of . . . constitutional rights"; second, "existing remedies do not redress [the] injuries"; and, finally, equitable relief is inadequate.[84] "The flagrant violation element 'means that a defendant must have violated clearly established constitutional rights of which a reasonable person would have known.'"[85] The Motion argues that Mr. Snyder was "not in custody, when Agent Regruto authorized his arrest," and "individuals who have not

---

[82] Motion, docket no. 19, at 11.

[83] Motion, docket no. 19, at 17–20.

[84] *Dexter v. Bosko*, 2008 UT 29, ¶ 22, 184 P.3d 592, 597.

[85] *Id.* ¶ 23 (quoting *Spackman v. Board of Education*, 2000 UT 87, ¶ 23, 16 P.3d 533, 538).

yet been arrested or imprisoned cannot assert unnecessary rigor claims."[86] The Motion argues that this is supported by the timeline alleged in the facts of the Complaint.[87]

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[88] The state counterpart to this protection is article I, section 9 of the Utah Constitution, which reads: "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. *Persons arrested or imprisoned shall not be treated with unnecessary rigor.*"[89] "The Eighth Amendment prohibition of cruel and unusual punishment has been made applicable to the states by the Due Process Clause of the Fourteenth Amendment."[90] "Although the first sentence of article I, section 9 closely approximates the language of the Eighth Amendment to the United States Constitution, the unnecessary rigor provision has no federal counterpart."[91]

In *State v. Herrera*, Herrera pleaded guilty and mentally ill to attempted murder and was sentenced to 1 to 15 years imprisonment.[92] State law provided he was to be transferred to the Utah State Hospital for care and treatment up to eighteen months, and then for incarceration at the state prison.[93] While still in the hospital, Herrera brought claims alleging cruel and unusual punishment related to the conditions at the prison, where he was not yet incarcerated.[94] The Utah

---

[86] *Id.* at 17, 13–19; *compare* Complaint, docket no. 1, at 4, ¶ 19, *with id.* at 9–10, ¶¶ 63, 67–69.

[87] Motion, docket no. 19, at 16.

[88] U.S. Const. amend. VIII.

[89] Utah Const. art. I, § 9 (emphasis added).

[90] *State v. Herrera*, 1999 UT 64, ¶ 43, 993 P.2d 854, 866..

[91] *Dexter*, 2008 UT 29, ¶ 7.

[92] *Herrera*, 1999 UT 64, ¶ 42.

[93] *Id.*

[94] *Id.* ¶ 40.

Supreme Court held that Herrera had "no standing to raise these claims; [because] he is not yet imprisoned and may not be for some time."[95] Herrera's claims lacked any standing because he was not incarcerated, but instead in the custody of the state hospital rather than at the prison, and, therefore, he could not make claims of cruel and unusual punishment.

Just as in *Herrera*, the alleged conduct in the Complaint attributed to Agent Regruto occurred before Mr. Snyder was arrested or incarcerated and while Mr. Snyder was in the hospital.[96] Similarly, the Complaint's fifth and sixth causes of action include conclusory and threadbare assertions directed at all Defendants for the treatment and medical care that Mr. Snyder received at the Carbon County Jail.[97]

There are no factual allegations that Agent Regruto was in any way responsible for Mr. Snyder's medical care or treatment after he ordered Mr. Snyder's arrest or while he was in Carbon County Jail custody. Mr. Snyder had been seen by a medical professional, and he did not pass away until he had been in jail, hours after Agent Regruto's involvement.[98] Thus, the Complaint, taken as true, has insufficiently pleaded factual averments of Regruto's responsibility, or of flagrant violations of due process, cruel and unusual punishment, or unnecessary rigor.

### 2.5 The Utah Governmental Immunity Act Bars Ms. Whiting's Tort Claims

The Motion seeks dismissal of the Complaint's seven state tort claims as barred under UGIA. Those claims are as follows: (7) Survivorship Claim Under Utah Law; (8) Negligent Infliction of Emotional Distress; (9) Intentional Infliction of Emotional Distress; (10) Loss of

---

[95] *Id.* ¶¶ 42-43, 45.

[96] *Id.* at 4, ¶¶ 19–20.

[97] Complaint, docket no.1, at 10, ¶¶ 59–70.

[98] *Id.* at 4–5, ¶¶ 18, 21, 25–30.

Filial Relationship; (11) Negligence Under Utah Law; (12) Gross Negligence Under Utah Law; (13) Wrongful Death Under Utah Law.[99]

"Governmental immunity shields the State and its employees acting in their official capacities from suit unless the State expressly consents to being sued."[100] To determine if an employee of a governmental entity is immune from suit under the Utah Governmental Immunity Act (UGIA), a three-part test is applied: "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver."[101]

A governmental function defined broadly as "each activity, undertaking, or operation performed by a department, agency, employee, agent, or officer of a governmental entity."[102] Given the broad definition, the alleged actions or omissions—specifically pertaining to Agent Regruto's ordering that a probationer be arrested—fall within the definition of governmental function. The claims also fail under the second and third prongs because Agent Regruto is either immune by lack of a waiver or by an exception to a waiver of immunity. Therefore, as discussed below, the claims against Agent Regruto are will be dismissed.

### 2.5.1 Claims For Survivorship, Loss of Filial Relationship, Negligence, Gross Negligence, and Wrongful Death Are Barred By The UGIA

The Complaint's seventh (survivorship), tenth (loss of filial relationship), eleventh (negligence), twelfth (gross negligence), and thirteenth (wrongful death) are all causes of action for "negligent act[s] or omission[s]" to act.[103] The UGIA waives immunity "as to any injury

---

[99] *Id.*

[100] *Graves v. Utah Cnty. Gov't*, 2024 UT App 80, ¶ 14.

[101] *Id.* (quoting *Van de Grift v. State*, 2013 UT 11, ¶ 8, 299 P.3d 1043, 1046).

[102] *Id.* at ¶ 15.

[103] Utah Code Ann. § 63G-7-201(4).

proximately caused by a negligent act or omission of an employee committed within the scope of employment."

Gross negligence is treated as negligence under UGIA.[104] Under Utah Code Section 78B-3-106, the elements of a wrongful death claim include "cause[] by the wrongful act or neglect of another . . . ."[105] The Complaint alleges "Defendants' deliberate indifference and gross negligence contribut[ed]" to Mr. Snyder's death.[106]

Utah Code Section 78B-3-107 provides that the elements for a survivorship claim include "cause[] by the wrongful act or negligence of a wrongdoer."[107] The Complaint alleges "Defendants' deliberate indifference and negligence."[108] The Complaint's Loss of Filial Relationship cause of action is based on the "Defendants' wrongful acts and omissions."[109]

Immunity waivers are subject to Section 201(4) of the UGIA.[110] Section 201(4) provides a list of exceptions in which a governmental entity does not waive immunity for an employee's negligent act or omission."[111] Under the UGIA, governmental entities, and its officers and employees, retain immunity "if the injury arises out of or in connection with, or results from," among other things, "malicious prosecution"; "the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause"; or "the incarceration of a person in a state prison, county or city jail, or other place of legal confinement."[112] The claims

---

[104] *See Cunningham v. Weber County*, 2022 UT 8, ¶¶ 30–31.

[105] Utah Code Section 78B-3-106.

[106] Complaint, docket no. 1, at 14, ¶ 107.

[107] Utah Code Section 78B-3-107.

[108] Complaint, docket no.1, at 10, ¶ 73.

[109] *Id.* at 12, ¶ 90.

[110] Utah Code Ann. §§ 63G-7-301(2)(i).

[111] *Id.* at § 63G-7-201(4).

[112] *Id.* at §§ 63G-7-201(4)(b), or (e), and (j).

alleged against Agent Regruto arise out of, or are in connection with, the institution of administrative or judicial proceedings for Mr. Snyder's ordered arrest and incarceration.[113]

Therefore, the Complaint's seventh (survivorship), tenth (loss of filial relationship), eleventh (negligence), twelfth (gross negligence), and thirteenth (wrongful death) causes of action are claims for negligent acts or omissions and barred against Agent Regruto under the UGIA.

### 2.5.2 The Claim For Intentional Infliction of Emotional Distress Is Barred Under The UGIA

The Motion seeks dismissal of Ms. Whiting's ninth cause of action for "Intentional Infliction of Emotional Distress" because immunity is retained for intentional torts.[114] "The UGIA does not expressly waive immunity for intentional tort causes of action."[115] Therefore, the Complaint's ninth cause of action is DISMISSED with prejudice.

### 2.5.3 The Claim For Negligent Infliction of Emotional Distress Is Barred Under UGIA

The Motion seeks dismissal of Ms. Whiting's eighth cause of action for "Negligent Infliction of Emotional Distress" because immunity is retained when the injury arises out of "infliction of mental anguish" under UGIA.[116] Though governmental immunity is waived for "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment,"[117] there is an exception to the waiver when "the injury arises out of or

---

[113] Complaint, docket no. 1, at 4, 10–14, ¶¶ 20, 71, 83, 89, 94, 99, 104.

[114] Motion, docket no. 19, at 21.

[115] *Salas v. Univ. of Utah Madsen Health Ctr.*, No. 221CV00437JNPDBP, 2022 WL 170066, at *3 (D. Utah Jan. 19, 2022).

[116] Motion, docket no. 19, at 21.

[117] Utah Code Ann. §§ 63G-7-301(2)(i).

in connection with . . . infliction of mental anguish."[118] Therefore, the Complaint's eighth cause of action against Agent Regruto for an negligent infliction of emotional distress is DISMISSED with prejudice.

In conclusion, the UGIA bars all of Ms. Whiting's tort allegations against Agent Regruto, and they will be DISMISSED with prejudice.

### 2.6 Ms. Whiting Cannot Recover For The Loss of Filial Consortium of An Adult Child

Ms. Whiting's tenth cause of action claims the "permanent loss of the companionship, society, guidance, and love of her son, Seth Raven Snyder."[119] Not only is the Loss of Filial Relationship Claim barred by the UGIA (see Section 2.5.3, *supra*), but it is also not a recognized cause of action under Utah law. Utah law recognizes causes of action for loss of consortium due to tortious injury to one's spouse, by statute,[120] and is extended by case law for the "right to recovery for loss of consortium to the relationship between parents and a minor child."[121] Mr. Snyder is Ms. Whiting's adult child. She cannot bring a claim for the loss of filial consortium. This cause of action will be dismissed with prejudice.

---

[118] *Id.* at § 63G-7-201(4).

[119] Complaint, docket no. 19, at 12, ¶90.

[120] Utah Code Ann. § 81-3-11 (noting that this is Utah's spousal consortium statute).

[121] *Benda v. Roman Cath. Bishop of Salt Lake City*, 2016 UT 37, ¶ 19,.

**ORDER**

Based on the foregoing, and finding good cause therefor, IT IS HEREBY ORDERED

that the Motion[122] is GRANTED. Agent Regruto is DISMISSED with prejudice from this action.

Signed January 28, 2026.

BY THE COURT

David Nuffer
United States District Judge

---

[122] Motion, docket no. 19, filed May 13, 2025.